## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. | **CONNIE A. WOODEN,** ) | |
| | ) | |
| | **Plaintiff,** ) | |
| **v.** | ) | **CIV-14-828-HE** |
| | ) | |
| 1. | **ARCHER PRESSURE PUMPING,** ) | |
| | **LLC f/k/a GREAT WHITE** ) | |
| | **PRESSURE PUMPING, LLC, and** ) | |
| 2. | **ARCHER WELL COMPANY, INC.,** ) | |
| | ) | **ATTORNEY LIEN CLAIMED** |
| | **Defendants.** ) | **JURY TRIAL DEMANDED** |

### COMPLAINT

**COMES NOW** the Plaintiff, Connie A. Wooden, and for her Complaint in the above-entitled action, alleges and states as follows:

### PARTIES

1.     Plaintiff, Connie A. Wooden, is an adult female resident of Cleveland County, Oklahoma.

2.     Defendants are:

a) Archer Pressure Pumping, LLC f/n/a Great White Pressure Pumping, LLC, an entity doing business in Oklahoma County, Oklahoma; and

b) Archer Well Company, Inc., an entity doing business in Oklahoma County, Oklahoma.

### JURISDICTION AND VENUE

3.     This is a cause of action arising out of Plaintiff's former employment with

1

Defendants based on claims of (1) disability discrimination and retaliation in violation of the ADA and ADAAA, and (2) interference with and retaliation for use of leave under the Family Medical Leave Act ("FMLA").

4.      This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331.

5.      All of the actions complained of herein occurred in Oklahoma County, Oklahoma. Defendants are doing business in such county and may be served in said county. Oklahoma County is located in the Western District of Oklahoma. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6.      Plaintiff has exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about February 24, 2014. Plaintiff received her Dismissal and Notice of Rights letter from the EEOC dated May 8, 2014 (received by Plaintiff by mail thereafter), and has timely filed this action within ninety (90) days of receipt of the notice of right to sue.

## STATEMENT OF FACTS

7.      Plaintiff Connie A. Wooden began her career with Defendants as an Accounts Receivable Clerk at Archer Pressure Pumping in or around March 2012. During her employment, her job performance was at least satisfactory, if not excellent. In fact, Wooden received a pay raise in or around June 2012.

8.      Wooden was jointly employed by Defendants. Wooden received pay checks

2

and W-2 forms from Defendant Archer Pressure Pumping, LLC.  However, Wooden reported to the Division Controller at Archer Pressure Pumping, Nick Meyers, Assistant Division Controller Scott Christiner, Archer Pressure Pumping Vice President of Operations Richard Mount, Archer Well then-CFO David Sparkman, and Archer Well Director of Credit/Collections Doug Dunlap.   All individuals listed, including Wooden, have ArcherWell.com email addresses.  And, Dunlap and Sparkman officed out of Archer Well's corporate office in Houston, TX.  Moreover, Archer Well responded to Wooden's EEOC filing.

9.      In or around August 2012, Meyers told Wooden that he was concerned Defendants were unlawfully charging Texas and Oklahoma customers for certain taxes on Texas well sites.  Specifically, Defendants were charging their customers for taxes that Texas law prohibited vendors from passing through to their customers.  As such, Meyers, Christiner and Wooden immediately began taking steps to resolve this unlawful action.

10.      In an effort to resolve the unlawful charges, Wooden spoke to Sales Manager Michael Fernandez about the issue.  Fernandez was the liaison with the customers and was responsible for quoting prices to the customers.

11.      Around the same time, Meyers involuntarily separated from his employment with Defendants in or around October 2012.  Mark Layton replaced Meyers as Division Controller for Archer Pressure Pumping.  However, Layton also had responsibility for the accounting at other Archer Well companies, including but not limited to Great White

3

Pressure Control and Great White Directional.

12.     Within days of Layton's arrival, Layton aggressively confronted Wooden about her report to Fernandez.  Layton stated that Wooden could not speak to anyone but him regarding this issue.

13.     Wooden asked Layton how she should bill the customers, in light of the issue with previous unlawful charges.  Wooden had been trained to prepare and submit such invoices to the Assistant Controller, who amended and gave final approval for the invoices to be issued.  Layton told Wooden to continue billing the customers for this tax as she had been doing.

14.     Due to Layton's actions, Wooden immediately reported his conduct to Human Resources Manager Dee Collinsworth.  However, Layton's aggression toward Wooden did not change.  In fact, Layton continued to raise his voice and belittle Wooden.  Layton did not treat other employees in this manner.

15.     In or around January 2013, Wooden began rapidly losing weight and experiencing difficulty eating.  Wooden began having trouble swallowing food or drink.  Wooden missed occasional days from work due to this unknown medical condition which was exacerbated by Layton's constant aggressive treatment of Wooden.  For instance, Layton yelled at Wooden for asking one of Defendants' employees to submit a field ticket of materials, which should be billed to a customer (as had been the policy).  Apparently, Layton changed such policy (without informing Wooden), stating that the field ticket for invoicing

4

did not have to be submitted to Wooden within three (3) days of delivery.  Layton then

disciplined Wooden for allegedly stepping outside her authority and demanding a field ticket

be submitted.

16.     In or around March 2013, Wooden made an anonymous report to a third party

complaint hotline contracted by Defendant Archer Wells.  In her report, Wooden stated that

Layton did not treat her equally and that he yelled at Wooden during their interactions.

Wooden also reported her concerns regarding the unlawful activity she witnessed on the job,

including but not limited to the unlawful charges assessed to Defendants' Texas and

Oklahoma customers.

17.     Approximately one (1) week later, Wooden was interviewed by Collinsworth

and Archer Wells Vice President of IT Rob Carnes regarding the anonymous hotline

complaint.  Wooden admitted during the meeting that she was the complaining party, and

Collinsworth indicated she already knew Wooden lodged the complaint.   During the

interview, Collinsworth agreed that Layton had been harsh with Wooden, and Carnes

suggested that Wooden buy Layton some cookies.  Collinsworth further agreed that a

meeting should be held within the accounting department to resolve miscommunication that

would lead to confrontations with Layton.   However, no such meeting was held, and

Layton's aggressive and unprofessional behavior continued.

18.     On or about April 22, 2013, Wooden went to the emergency room because she

could not swallow anything.  At that time, Wooden had lost nearly thirty (30) pounds due to

this medical condition.  Wooden was absent from work the following day and two (2) days the following week for this issue.  Wooden was not notified of her FMLA rights at that time.

19.    On or about May 17, 2013, Wooden underwent an outpatient procedure to determine the cause of her difficulty swallowing.  Thereafter, Wooden was diagnosed with Barrett's Esophagus, a serious and rare complication of gastroesophageal reflux disease (GERD), which causes an increased risk of fatal cancer of the esophagus.  Wooden was further told she had some dysplasia in her esophagus, indicating that she would likely develop such cancer.  Wooden continued to have significant difficulty eating because her esophagus was twisted.  Wooden communicated this information to Defendants. Wooden was not notified of her FMLA rights at that time.

20.    On or about June 19, 2013, Layton told Wooden that she had missed too much work.  Wooden told Layton that the absences were related to her medical condition.  Wooden also stated that some time off was due to Defendants' lack of work for her wherein she went home with approval.  Wooden was not notified of her FMLA rights at that time.

21.    On or about July 19, 2013, Wooden broke her foot in an off-the-job accident.  As a result, Wooden was placed off work from on or about July 22, 2013 until July 25, 2013.  Such leave was FMLA-qualifying leave, however, Wooden was not advised of her FMLA rights.

22.    On or about July 29, 2013, Wooden was issued two (2) write-ups by Layton and Collinsworth.  One write-up was for alleged unprofessional conduct in communicating

with co-workers and supervisors.  The other was allegedly for excessive absences resulting

in a negative PTO balance and an alleged unnecessary burden on the accounting department.

Such reasons were false.  Wooden conducted herself in a professional manner on the job.

And, many of the absences were FMLA-qualifying as they related to Wooden's medical

condition.  Further, all of Wooden's absences were approved by Layton.

23.    Moreover, it was Wooden who notified Defendants that they incorrectly paid

her PTO time after her PTO was exhausted.

24.    In or around November 2013, Wooden requested the first week of December

off to travel to the Mayo Clinic in Arizona to be seen for her rare medical condition.  On or

about November 7, 2013, Wooden was notified that she could apply for FMLA for such

leave.  The same day, Wooden was written up by Layton again for alleged unprofessional

behavior in an email to a co-worker.  However, Wooden had been directed by Collingsworth

to collect the information Wooden requested in her e-mail.

25.    On or about November 21, 2013, Wooden was terminated by Collinsworth and

Layton.  Layton stated the reason for her termination was because she had not communicated

a request to be off work on November 15, 2013 directly to Layton.  However, Layton signed

off and approved Wooden's request to be off work that day in preparation for her visit to the

Mayo Clinic.  Layton also approved Wooden's request to be off work November 22, 2013

for the same reason.  Therefore, such proffered reason for Wooden's termination was merely

pretext for unlawful discrimination and interference with and retaliation for Wooden's use

and attempted use of FMLA leave.

26.     In addition to the medical conditions from which Wooden suffered listed above, Wooden suffers from anxiety.  Due to these medical conditions, Wooden is a qualified individual with a disability in that she is disabled, has a record of a disability and/or was perceived as disabled. Her disability substantially limits and/or limited her in one or more major life activities, including but not limited to eating, drinking, sleeping, breathing, and thinking.  Her disability impacts one or more of her internal bodily processes, including but not limited to normal digestive function and normal neurological function.  However, at all times relevant hereto, she was able to perform the essential functions of her job with or without reasonable accommodations.

27.     As a direct and proximate result of Defendants' actions, Wooden has suffered the injuries described hereafter.

## COUNT I - ADA AND ADAAA

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

28.     The matters alleged above constitute discrimination based on a disability, a record of a disability and/or perceived disabilities in violation of the ADA and ADAAA.

29.     More specifically, Plaintiff was a qualified individual with a disability in that she suffers from a physical impairment which substantially limits her ability to perform one or more major life activities as set forth above.  Further, Plaintiff's disabilities impact one

or more of her internal bodily processes as shown herein.   And, Defendants perceived Plaintiff as a disabled individual.

30.     Despite said impairments, Plaintiff could perform the essential functions of her job with or without reasonable accommodations at all relevant times hereto.

31.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

32.     Because the actions of Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT II - FMLA

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

33.     The matters alleged above constitute interference with and retaliation for Plaintiff's use and/or attempted use of medical leave for self care in violation of the Family Medical Leave Act.

34.     Plaintiff was entitled to medical leave because she required time off to care for herself due to a serious health condition (as set forth above) and worked for Defendants (i.e., entities with more than 50 employees within a 75 mile radius of Plaintiff's worksite), for more than one (1) year and for more than 1,250 hours within the one year prior to her need for leave.

35.     Defendants retaliated against Plaintiff for her use of time off and interfered

with Plaintiff's ability to take additional FMLA leave.

36.     As set forth herein, Defendants' actions were in willful violation of the law. Defendants were aware of FMLA and the requirements contained therein, but willfully violated Plaintiff's FMLA rights.

37.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries and is entitled to recovery of all damages, including, but not limited to, lost wages (past and future), liquidated damages (based on the willfulness of Defendants' violation of the FMLA), attorney fees and costs.

## COUNT III - Whistleblowing

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

38.     The acts above-described also constitute a violation of Oklahoma's public policy which prohibits wrongful termination and retaliation against a whistle-blower for performing an act consistent with a clear and compelling public policy, i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would condemn.

39.     As damages, Plaintiff has suffered lost earnings, past and future, and other compensatory damages.

40.     Because the actions of the Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

### **REQUEST FOR RELIEF**

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and assess actual, compensatory, punitive damages, and liquidated damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 5th DAY OF AUGUST, 2014.**

> s/Jana B. Leonard
> JANA B. LEONARD, OBA# 17844
> LAUREN W. JOHNSTON, OBA #22341
> LEONARD & ASSOCIATES, P.L.L.C.
> 8265 S. WALKER
> OKLAHOMA CITY, OK 73139
> (405) 239-3800      (telephone)
> (405) 239-3801      (facsimile)
> leonardjb@leonardlaw.net
> johnstonlw@leonardlaw.net
>
> JURY TRIAL DEMANDED
> ATTORNEY LIEN CLAIMED